Exhibit 2

Civil Case:
24-10864 WGY

Exhibit 2

FILED
IN CLERKS OFFICE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

2024 JUL 15 PM 3: 02

U.S. DISTRICT COURT
DISTRICT OF MASS.

July 15, 2024

MICHELLE M. TORREY
Loss of consortium

Plaintiff,

Civil Action No.
24-10864-WGY

v.

CITY OF BROCKTON
OFFICER JOHN DOE, INDIVIDUALLY AND ACTING FOR BROCKTON POLICE DEPT.
AND IN HIS OFFICIAL CAPACITY AS A LAW ENFORCEMENT OFFICER
UNITED STATES OF AMERICA
SEVERAL JOHN DOE'S AND JANE DOE'S, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES AS AN FBI AGENT
COMMONWEALTH OF MASSACHUSETTS
STATE TROOPER BRIAN RICHARD KILFOYLE, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY
SEVERAL JOHN DOE'S and JANE DOE'S, INDIVIDUALLY
AND IN THEIR OFFICIAL CAPACITIES ACTING FOR MASSACHUSETTS STATE
POLICE
DISTRICT ATTORNEY'S OFFICE FOR DISTRICT OF MASSACHUSETTS
NICHOLAS SOIVILIEN INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A
FEDERAL PROSECUTOR

Defendants.

## AMENDED COMPLAINT FOR A CIVIL CASE

Michelle Torrey sues City of Brockton and officer John Doe, Federal Bureau of Investigation aka
Agents for the United States of America, multiple John Doe and Jane Doe Agents, Individually
and in their official capacity, the State of Massachusetts, State Trooper Brian Richard Kilfoyle
Individually and in his official capacity, John and Jane Doe State Troopers of the Commonwealth
Individually and in their official capacity for a gluttony of Constitutional violations, civil rights
violations, as well as violations of state and federal law. Not limited to committing crimes,
stealing currency and other articles of personal property. The Plaintiff and all occupants of 294

Prospect Street Brockton, MA 02301 were subjected to violations U.S.C.A. § 24 (2)(d)(1) A,

U.S.C.A Constitutional Amendment 4; U.S.C.A. Amendment 5, 31 U.S.C.A. § 5317, 19;

U.S.C.A. § 1615, U.S.C.A. Constitutional Amendment 8; 18 U.S.C. § 983 (c), Violations of Civil

Asset Forfeiture Reform Act of 2000, Violations of 18 U.S.C.A. § 983 called into doubt

Unconstitutional see United States v. Mendoza D.N.M. Sept 11, 2020 Title 18 Part 1 Chapter 46

February 18, 2016, 28 U.S.C.A. §§ 1345, 1355. Violation of Federal Rules of Evidence (404) b

and 403, 21 U.S.C.A. §§ 881. 28 U.S.C.A. 2416(d)(1)(A), 42 U.S.C.A. § 1983; U.S.

Constitutional Amendment 14; 21 U.S.C.A. Constitutional Amendment 6 § 853 (n)(e)(c)

Violation of Health and Sanitary Code 114884 (i) in its entirety ; 18 U.S.C.A. § 983 General

Rules for Civil Forfeiture Proceeding (1) A (i) (ii) (iii) (I) (II) (IV) (V) (B) (C) (D) (F) (2) (A) (C)

(I) (3) (A) (4) (A) (5).


# BACKGROUND

On the night of July 16, 2019 before midnight, my son, Christian Soares, was arrested by

Massachusetts State Police and New Bedford Gang Unit. When he called me, he stated that he

was assaulted and sodomized by a Massachusetts State Trooper later identified as Massachusetts

State Police Trooper Brian Richard Kilfoyle. Christian had used his first phone call somewhere

between the hours of 5:00am and 6:00am to advise me of this and I subsequently made my way

to the Massachusetts State Police Station to bring him some clothing. In tears I pleaded but I was

denied access to see him by the officer at the desk. I was advised that my son was okay and

reassured me that he was fine when I pressed on and inquired about his physical condition. The

officer then took the clothing I had brought for my son to appear in court and yet again assured

me that my son was physically fine. Still crying, as a mother would be, I left and called his

attorney and requested if Mr. Krowski would represent him in this matter.


After one week of digesting the abuse that my son Christian Soares had endured, I called the

Governor's office . Mr Charles Baker was in office and I requested that an investigation be

conducted to explain the events that had transpired. After submitting a request to receive a copy

of the investigation report from the Governor's office, I was told that I would receive one when the investigation was complete. I never did receive a copy of that report. It was subsequently brought to my attention that just a few months after this incident occurred with my son, State Trooper Brian Richard Kilfoyle was arrested in a Newport, Rhode Island strip club in September of 2019 for disorderly conduct, fighting, and resisting arrest. See Exibit 1. My son was brought to the hospital by his abuser, Mr. Kilfoyle, which is a violation. There is video of my son screaming "Rape!", as Mr. Kilfoyle had him naked in the streets of New Bedford, ripping hair from his rectum area and penetrating him with an object. This video is on my phone and I am ready to submit it as evidence at trial. He is heard commanding the officers to "break his legs". This is clear abuse under the color of law. Mr. Kilfoyle must be held accountable for these actions that violated constitutional law under state law and code of conduct. This event has caused a loss of consortium to the mother and entire family unit. It took me 2 weeks or more to watch the video my daughter saw and told me about. I did not want to watch or hear it as she described what she saw and heard while playing the video. I finally got the courage to press play and watch it myself. I was devastated and furious at the same time at the thought that someone would inflict pain on another with malice and menacing behavior that he clearly knew was wrong and against the oath which he had taken, as well as Federal Law, Massachusetts State Law and Code of Conduct of the State of Massachusetts in which Mr. Kilfoyle took a sworn oath. After viewing that heinous video I brought it to Attorney Krowski to take action immediately.

## INTRODUCTION

While awaiting trial for the above referenced arrest, the Coronavirus pandemic struck and Christian was granted by your court magistrate compassionate release to come home on an ankle bracelet with home restriction due to the pandemic, and he was released. Probation would monitor him via the bracelet and if ever they received an "out of range" notification, they would call and he would confirm that he is in fact at home, usually in bed, sending a picture to confirm his whereabouts. This sequence of events kept occurring. I brought my son to Federal Probation in Taunton and a probation officer switched out his bracelet. In the following days calls continued to come in from the Probation Department in which I witnessed probation calling him

while he was in fact inside our home, yet the bracelet was still giving an "out of range" signal.
He would then proceed to take a picture and send it to his probation officer, as he had done prior.
His probation officer subsequently informed him that if this continued to happen that he would
be violated. Christian asked why he could not have a GPS monitor bracelet instead so they could
accurately see his location, and that he was on the property. He was told that they use what they
have available. Prior to his release, the Chief Probation Officer came to our property to inspect
and we tested the range to determine if Christian would be able to take on tasks on the property
like assisting in caring for the animals and livestock since we tested how far he could go in the
rear yard without binging an "out of range" alert. At that time the Chief Probation Officer
determined that he could walk the dog in the rear yard and also go to the chicken coop to assist in
the care and upkeep of the chickens. There was only one time that I witnessed where we received
a call indicating he was out of range when he was in the rear yard with the dog. Every other time
he was inside the house. His Probation Officer called the day before my house was illegally
raided by agencies and Jane and John Doe's, that he violated him and he was to appear in court
the following day at 8:30am. The date and time of when Christian was to appear in court was
confirmed and Christian confirmed that he would be present at the required time. It is up to a
judge to decide whether he violated probation. The actions of the Probation Officer were a clear
violation of due process as my son never got a chance to explain that the "out of range"
violations could have been a result of faulty equipment or the misleading Chief Probation Officer
that told him he could go outside and perform the duties of the home (ie walking the dog and
feeding the livestock). As a team, the Chief Probation Officer, my son, and I, tested and
determined it was within range.

It is my sincere belief that the Probation violation that resulted and lead to the following events
was a result of the ankle bracelet failing to operate as intended or that the violation was actually
retaliation for the investigation of Massachusetts State Trooper Brian Richard Kilfoyle. I believe
that State Trooper Kilfoyle conspired with other State Police officers and Investigators to muddy
the waters for his blatantly clear violations of my son's Fourth and Fifth Amendment
Constitutional rights that took place in July 2019. Although I did not receive a copy of the

investigation into Mr. Kilfoyle's misconduct and abuse of power, I was informed by my son's attorney at the time, Joseph Krowski, that Mr. Kilfoyle was not allowed to interact with the public in a professional capacity and was on some type of "desk duty". "Desk Duty" is far from the appropriate punishment for someone who was caught on video clearly perpetrating a crime. In the referenced video, Mr. Kilfoyle can be heard yelling "Break his legs",  while my son is screaming, at which point Mr. Kilfoyle strips off his clothing, yanking down his pants, and multiple other officers hold Christian down in various restraints while Mr. Kilfoyle inserts a foreign object into his rectum. Immediate terminational a minimum should have been the consequences for said actions. I have a video that was sent to me from an unknown source as well that will be submitted during trial and evidentiary discovery. If so requested by the court, I can submit said video prior to that. The events that very clearly took place are clear violations of Constitutional law and civil-rights 42 U.S.C. § 1983.

In the early morning hours before 6:00am on March 23, 2021, the Brockton Police, FBI Agents, and ATF Agents breached the door of my home, they did so in a violent fashion, without knocking, and without use of a loud speaker. A flash bang or some kind of explosive device was used to gain entry into my home. It was the loudest noise I've ever experienced in my life and shook my bed which was located directly above the side door where they breached my home. I jumped out of bed as I was confused and thought someone had gotten shot, and the only person that I thought was in my home downstairs was my son. I was not dressed and I went to my foyer and saw what I thought was an alien flying in the air with what looked like long legs and lights at the bottom. I screamed for my boyfriend to help me as the house was sparsely lit and I could not see much since I usually dim the lights at night. I went to get my bag that had my inhaler because I was having an asthma/anxiety attack and was gasping for air. I ran to my bathroom and when I saw my daughter coming out of her room, I yelled to her to get back in her room because "aliens are in the house". My daughter yelled "Mom, it's the police, and that's a drone." I yelled again for my boyfriend telling him this time that the police are here. He proceeded to look out the window and a red dot immediately appeared on his forehead. I looked around and we all had red dots on our foreheads.

At that moment in time I was absolutely terrified as none of us knew what was going on. We heard a loud speaker come on ordering us to come out of our home with our hands up. The drone kept flying towards us which made it impossible to get down the stairs. Once we heard instructions again, after multiple attempts to get by the drone in the middle of the staircase on the second floor landing, I hit it with my arm to pass and it fell down the stairs. The drone appeared to be disabled on my kitchen floor. I was the first to exit my home and was asked where my son was in the home. I advised them that he was in the basement and they began to smash all the windows on the lower level (a.k.a. the basement) in an attempt to gain entry. While I was being manhandled and dragged out of my home, I stumbled and scraped up my knee on broken glass that was strewn across the concrete landing at the end of the steps. My knees were scraped and bloodied.

During their initial attempt to enter my home, they were met, however, by our pit bull, and this deterred the agents from entering the property. The Agents then proceeded to contact Brockton Animal Control and waited for the dog to be removed. While waiting for Animal Control to arrive, my daughter attempted to explain to officers and agents that her brother has mental disorders and pleaded with them that not aggressively approach him. She even went as far as to have one of the agents "pinky promise" that Christian would not be harmed. Now outside of the home, I looked around and noticed that the streets was blocked off with standard police cruisers with their emergency lights on, and with 2 military type vehicle, perhaps army style tanks. There were at least 40-60 law enforcement officers/agents present and on the backs of the vests that I could see the words "F.B.I.", "A.T.F.", "STATE POLICE", and "BROCKTON GANG UNIT". Most of these Agents and officers were in plain clothes and at least 20 persons in army fatigues. All of them had what looked like AK automatic weapons, all drawn on my house which was illuminated with high powered lights.

I knew they were going to assassinate my son and I felt if he resisted and did not comply in any way that he would be murdered. I yelled out as loud as I could to my son Christian to come out

of that house now! I started to cry aloud as I watched the officers and agents going up the stairs with guns drawn. Before entering, I saw my son appear in the doorway and law enforcement immediately put him in handcuffs and placed a mask on him. This occurred in the foyer, clearly visible for everyone including myself to see. As he was passing by he said, "I love you Mom" and I asked him what's going on. He said "They have a warrant for a probation violation, which is a body warrant, not a search warrant. Go back in the house and go back to bed. I have court in the morning. Tell them to leave, I'm in custody. They do not have a search warrant. Tell them to leave, they have no right to be here now that I am in custody"

Immediately I told law enforcement that I was going back into my home and to leave the premises. I also told the now growing group of onlooking neighbors, "Go back in your house. Nothing to see here. Party over" as many neighbors were now out of their homes watching the events unfold. An agent approached my boyfriend and myself where we had been positioned previously and gave me the jewelry that my son had on and said "He is okay. He said he's sorry and he loves you." Since Christian had been very respectful and surrendered without incident, the agent complied with Christian's request to give his jewelry to me. My daughter, my son, and I instructed law enforcement to leave my property several times. At this point in time they only had a body warrant for the arrest of my son Christian. When he met them at the door and he was placed in handcuffs and placed into a parked law enforcement vehicle, that is where their right to be on my property ceased. I have video tape evidence showcasing that after my son had already been taken into custody, the sky was still dark, indicating that it was at or before dawn that he was taken into custody.

While law enforcement was conducting an illegal search of my home, under the guise of retrieving the drone that was a mere two steps into the property from the side door, Heather Bingle was then led and placed just a few feet from where my family was placed and told to stay. Before Ms. Bingle's and my son's phones were illegally confiscated by law enforcement, she was able to start a video recording of the events that transpired, all while being handcuffed. I then made another request to law enforcement that they leave the property and that I wanted to

go into my home to use the bathroom. While still recording, Ms. Bingle stated, "I have you all on video. They're being illegal as F***." Once agents were aware that they were being taped, an altercation began between law enforcement and Ms. Bingle in an attempt to confiscate her phone so she would not be able to memorialize the events. Officers were being aggressive with Ms. Bingle, pointing their weapons at her stomach. The barrel of the rifle was touching her person. A back and forth ensued between Ms. Bingle and law enforcement and my daughter and I can be heard asking them to leave her alone. Before this situation spiraled out of control, a female officer stepped in between Ms. Bingle and other law enforcement officers and diffused the altercation. The female officer states, "I got you girl" and moves her closer to met family. Then Ms. Bingle is instructed by other officers, including the two aggressors, to go to the front lawn, about 30 feet or so from where we were standing. Law enforcement officers then began to question Ms. Bingle, searched her person, was told to open her pocketbook. They then took her pocketbook, placed it on the ground, and took multiple cell phones and a wad of cash. She asked them why they were taking her belongings and they stated it was part of the investigation because she had recorded them., her phone was to be seized. Ms. Bingle stated "There are multiple phones, why are you taking them all? Two, I believe belong to my son." One of the law enforcement officers then proceeded to tell her to "Shut the F*** up. You're going to jail." They then joked trying to trigger her that they were going drinking and partying with her money tonight. I could not hear her response. One of the agents called her probation officer asking if she was to be violated for her association with Christian. I do not know what the probation officer said but in the end, Ms. Bingle later left the property.

While the altercation and exchange with Ms. Bingle was unfolding, I witnessed multiple officers entering and exiting my home. Carrying out a lightweight drone does not require multiple officers. It wasn't until it was daylight out when the same officers who broke the law by remaining on my property after already having the subject of their body warrant in custody, came out of my home with planted evidence in a red bucket. I typically use that very same red mop bucket to clean and sanitize my floors so it smells strongly of chemicals on a regular basis. They

then told us to move away from the stone wall that there were "very dangerous drugs, Fentanyl" that could kill us in the bucket full of water.

After the exchange with Heather Bingle took place, I again requested for law enforcement to leave my property so I could use the bathroom and get clothes to prepare for an appraisal appointment I had previously scheduled for 10:00am. I was told we had five minutes to collect any clothing and use the restroom, but we were not allowed to be in our home without law enforcement present. While in the home retrieving some clothing, I disclosed to the same female officer that had intervened on behalf of Ms, Bingle, that I had a safe that was bolted into the floor and was fireproof in my bedroom. Additionally I disclosed that there was a large sum of money in said safe, approximately $150,000.00. She then told me that I would be required to give them the code to the safe, at which point I said, "Absolutely not!" After retrieving some articles of clothing, I then asked if we could leave the premises. Since we were not being allowed access to our home, I'd have to rent a hotel room to house our dog that had been returned from Animal Control and to have a place to shower and get ready for work. We were told we would not be allowed back into our property, that the property is frozen. I asked, "what does that mean" and an FBI agent replied that I would not be allowed into the property until they obtained a search warrant and completed a search. I said, "you already searched my property without my permission for over 25 minutes." He stated again that I would need to make other arrangements to get ready for work. I asked, "Am I allowed to leave?" The law enforcement officers talked amongst themselves and we were told we could leave but they must search our person and our vehicles before leaving the property. They conducted said search of our vehicles and a female officer did a frisk on myself and daughter while a male officer patted down my boyfriend.

I rented a room at Holiday Inn in Brockton. While I was getting ready for my appointment, Attorney Bill Sims finally returned my call since I had called him over 20 times. He instructed me to cancel my appointment and immediately return to my property. I asked him why as I had a vey important appointment. He told me "You do not know what is going on at your home. They could be bringing anything in or out. Get back to your home immediately and start video tapping

to memorialize." I told him that they told us multiple times that we could not record as my daughter and I were both threatened that our phones would be taken into custody as evidence if we continued to record. We were told that if our phones were taken that we would not receive them back until the trial was over which would be multiple years. I am a Realtor by profession and my phone is the most important tool required to facilitate my job duties. Attorney Sims told me that as soon as I got back to the house that I should have my boyfriend record instead of me. He further instructed me to give my phone to law enforcement upon my arrival with him on speakerphone so that he could so that he could ask law enforcement under what authority were we being denied access to our property. I have a recording of this sequence of events.

When I returned to my property, FBI agents were still in my home. I observed from across the street since that is where I parked, could see them coming and going from the interior of my home. I was on a hill and could see multiple agents in my backyard searching the exterior of the property. I walked over while my boyfriend was recording and followed Attorney Sims' instructions. As soon as they noticed my presence I heard one agent tell the others to get out of the home, "she's back". Attorney Sims had a conversation with law enforcement and will be a witness at trial. Attorney Sims went on to tell me directly that when the warrant does arrive that I am to go with the law enforcement officials room to room but to stay out of the way and record.

After ending the conversation with Attorney Sims I asked law enforcement agents if I could be in my home while the property was being searched, as I am well aware that it is my legal right and was also advised of such by my attorney. They said, "No". I immediately called Attorney Sims but he did not answer. Christian's attorney Joseph Krowski was in court and could not assist so I called Attorney Paul Clancy, briefly explained what was going on and asked him to come to my home. Within 15 mins he arrived. Attorney Clancy was at my home for approximately an additional 30 mins before the "warrant" arrived. During that time I conveniently had in my vehicle a copy of a settlement sheet that showed that approximately three months prior I received well over $220,000.00 proceeds from the sale of my previous home. I explained to Attorney Clancy that some of the money that was in my safe was proceeds from that sale. The monies that

were in my safe was a combination of proceeds from the sale of my previous home as well as earnings from my employer I had been saving since 2017. I was extremely worried that money in my safe would be stolen as I had already witnessed Ms. Bingle's money being taken and her being told by the law enforcement officers that they'd personally be spending it later that night. Attorney Clancy took the settlement sheet and started talking to an agent that he personally knew, that he said was involved in a forfeiture/seizure from a raid that was conducted at Attorney Clancy's father's residence. He explained my concerns to the agent and showed him the settlement sheet and explained that this was honestly earned and acquired money and should not be subject to seizure or forfeiture. He said, the Government can not establish a nexus between the money in my safe that was in my bedroom that has a lock on the door to be considered drug money or money derived from illegal activity subject to forfeiture. After much discussion he convinced me to give the code to the safe to the law enforcement officers under the understanding that it would be protected and not be considered to be derived from any wrongdoing. Although it was not something I was comfortable with, I reluctantly gave the code to my safe to avoid what officers said would transpire if I did not. I had moments earlier been told that if I did not willingly give them the code, that they would have to use explosives to gain entry into the safe and that my personal belongings in the home, as well as the structure of my home may be compromised in the process.

While my mother and I were sitting on the front steps and Attorney Clancy was speaking with the agent that he knew, several officers came running towards the front yard on walkie talkies and I overheard mention of a white male that had wandered into my backyard, saw the officers and ran from the backyard into a silver/grey vehicle and fled. Multiple officers were observed running to their vehicles that were parked in front of my home. The female officer with blond hair stated not to worry, she had every license plate number for the last two weeks of anyone who had come and gone from my residence. She stated the property has been under surveillance for over two weeks. If this was the case and law enforcement felt illegal activity was taking place at my home, they had all the time to apply for the correct warrant and not use a probation violation as a vehicle to illegal search and seize assets.

A few minutes later, the warrant finally arrived, at which point it was presented to Attorney Clancy for review. However, it was warrantless warrant, as agents fabricated the facts to obtain a warrant from the magistrate or judge. He asked if he could be in the home while it was being searched to calm my anxiety of any possible theft or deliberate destruction of personal property. He was told "No". At this point Attorney Clancy left the property as there was nothing further he could do to assist me. Attorney Clancy will be subpoenaed to testify to these facts.

While the illegal search of my home ensued , my mother an I remained on the front steps of my home. I witnessed an FBI agent going into a black truck and he pulled out a flat object with what appeared to be baggies of drugs on top of it and brought it into my home. While he was approaching my home I asked him "What are you doing? Are you bringing drugs into my house?" He ignored me and continued into my home.

By the time the search ended several hours later, my mother, boyfriend, and I, along with our dog, were relocated to the rear of the property. As previously we were being sequestered in the front yard. After two minutes of sitting on a bench in the back yard where there were numerous officers and a canine, an officer started to yell for assistance. He pulled an automatic rifle from a wood pile. I feel as these events were orchestrated and agents had plenty of time to plant evidence as they were in the rear yard with no oversight for hours. They had access to my home for at least an hour and a half while I left the premises to rent a hotel room for my family and I.

Within a half hour later law enforcement came to the back yard and told us they were packing up and asked me to sign an inventory list. I noticed that the inventory list had been marked down that currency was taken, however, no amount was listed. I asked them "did you take my money out of my safe to which they replied "Yes". I again went through the closing statement of the sale of my home with agents and advised that they were not legally able to seize those funds as they were honestly acquired and not subject to forfeiture as no illegal activity was involved. I requested that they put down an amount on the inventory list sheet. He stated, they did not count

it. I told them to come inside as they had plenty of agents on scene to count my money. I

followed a few agents into the kitchen where we sat at the table and each agent wad given a stack

of money to count. I noticed my money was not banded as it had been when I had placed it in the

safe. When my money was placed into the safe in money bags, each band contained $1000.00 in

$100.00 dollar bills, was initialed and dated by the bank teller at the Bank of Easton.

Additionally, the bands of hundreds were in Bank of Easton white envelopes, and those white

envelopes were in Bank of Easton money bags. There were two money bags present in my safe

in the evening when I went to bed. Also, there were two larger envelopes with a large amount of

cash in the safe. One envelope said "Rent" and the other was blank. The agent that I had

observed bringing drugs into my home seemed to be in charge. He stated and wrote on the paper

the only the amount he just counted. I told him "That's not all my money in the safe! Where is

the second money bag?" He stated "The money bag is in your safe." I asked for clarification,

"The second money bag is in my safe?" To which he replied "Yes". I was confused by this as I

could not understand why they would take some of the money in the safe but not all of it. After

making that statement, the officer in charge quickly went out the door and was off of my

property in less than a minute. Distracted and out of sorts by the trauma that had just ensued, I

did not think to go up to the safe to check for the second money bag until after I got a glass of

water. Upon inspection of my safe I noticed that there was no second money bag and multiple

items of jewelry were missing. I knew for a fact that those items were not listed on the inventory

list I was asked to sign. I am in disbelief at the fact that law enforcement could abuse their power

to illegally obtain the personal property of the citizens they are called and sworn to serve and

protect and is their fiduciary duty.

## GENERAL ALLEGATIONS

1. The government cannot draw Nexus to honest earned money that was seized most stolen by

one of the many FBI agents working for the United States or state police. The claimant cannot

say which officer or Agency was the thief as both home owners were denied access to watch

while officers illegally searched their home. Claimant whom brought a licensed Attorney to the

Scene was also denied access to be present inside claimants home when searched especially safe which claimants concern was larceny as she just witnessed with Ms. Bingle currency and property. Clement had right to observe in her home.

2. Ms. Bingle contacted US state attorneys office in which she was told that they are not holding her money which we all being myself my daughter and boyfriend saw them take.

3. Larceny is against state of Massachusetts laws, as well as code of conduct, for any law enforcement official. Therefore, State Police, Brockton Police, and FBI Agents violated their own policies and oath sworn to by each law-enforcement official.

4. Michelle Torrey had $148,820.00 at bare minimum in her safe that was last time she counted, which had been a few months so potentially there was over $160,000. The inventory sheet had $62,400 that means someone stole just under $100,000.

5. Ms. Torrey had an expectation of privacy, and was subject to be demanded out of her home at gunpoint, forced out of bed to be scantly, dressed in nighttime hours in public, surrounded by strangers. All the while they only had a probation violation warrant for my son. They could have knocked at the door, and I would have brought him upstairs, or he could've came upstairs as he did when placed in custody we could all see him he was at the side door. No reason to violate my fourth amendment, as well as my expectation of privacy. My home was not my castle, as it should be considered.

6. My son was in custody again at the door. The officers pushed him inside a little, but we could still see him once in custody, which took less than 30 seconds and placed in cruiser. I was still denied access to my home.

7. I tried to make my way into my home, but was pushed back by either state police FBI or ATF. I said I'm going in my home in which I was told no you are not. I asked if I was under arrest and was told no but blocked access to my steps.

8. I saw numerous officers running up my stairs in which is crazy as myself and boyfriend pay the bills and officers were already told to leave. I was yelling. Where are you going he said to retrieve their property. I yelled not your house. I will get it and return it to you. Get off my property my instructions as the homeowner were ignored. They acted as I had no right to deny access to my home.

9. It is a common practice, not a policy that arresting officers during illegal and legal drug raids, steal money and property as they feel justified as the practice is drug dealers are scum and easy target as most are criminals with records, and no employment theory and practice. They are criminals who won't report or don't report or contest as they know who will believe them in relation to claimant. I am not a drug dealer, but a respected innocent realtor in my community that was sleeping in her bed before violently Awoken made to be in fear for my families life, and then robbed of her dignity, property and entire life savings. By an unspoken practice that is okay to steal from drug raids as it is a common practice. I have one person that I told this unbelievable story to, one of my daughters tenants. He lives in Massachusetts the same thing happened to him. Stolen currency during a drug raid. I asked what did he do about it. He said nothing. His attorney said if he fights it, he will get a worse sentence he will receive a subpoena to testify. Stealing/larceny by anyone is criminal, but when it is done by law enforcement, it is irresponsible.

Law enforcement officers are trusted with significant power and authority; and it is crucial that they uphold the law and respect the rights of the individuals. They are sworn to serve and protect.

Instances of police theft undermine the public trust in law enforcement, and have serious consequences for individuals and communities. The public is protected by 28U.S.C.A. 1442 (a)

(1)(2)(3)(4)(b)(c)(d)(1)d(3) revised (a)(1) is extended to apply to all officers and employees of the United States or any agency there of section 76 of title 28 U.S.C.1940 ed or incorporated in sections 1446 and 1447 of this title.

Ms. Torrey was denied the right to press charges when telling Brockton Police Chief the story; I told her they stole from my home, and I would like to press charges in which she replied your money wasn't stolen it was seized. I said no it was stolen, some seized but more stolen.

She was very empathetic and called me back and gave me the number to federal prosecutor which I had already contacted. However, I contacted again. Without filing suit, I will never get the names of the officers that were here as no names were given even when asked as soon as I get all officers name and number and address I will immediately file charges on each, and every one of them that entered my property illegally for larceny. Until one of the officers admit to the theft and return my money and jewelry, then they all will have to answer in federal court for theft. I cannot determine whom was the thief but if they wanted to avoid being accused the law enforcement agencies on scene one should not have placed greed before their badge and the oath sworn to the Commonwealth. This also could have been avoided if myself or attorney, Paul Clancy were allowed to be present as the law allows. This is a violation as the homeowner is allowed to view and overlook their property while the government is in their home. This court has jurisdiction to provide relief as I want an immediate return of my money in the governments property $62,420 and Honorable Judge Young must hear this case and provide counsel as this is a serious and urgent matter and the claimant has suffered tremendous harm and the government keeping honest money for another minute is a minute too long. Imagine a huge gang coming in the cover of dark blowing your door open and seizing then stealing $100,000 and I must beg and file civil lawsuit to get hard earned money returned. Then I must become a lawyer while sick, spend three weeks in law, library, pay friends to help copy and get video evidence onto hard drives to submit a court to get back money you earned and paid taxes on. Sounds crazy but true. I am still shocked three years later. I am not a lawyer, but have been forced to waste valuable time

to get my lawful money back is injury to insult. The government will be held to the fullest extent of the law.

# FACTS OF LAW

1. Under 18 U.S.C. Section 242 Home Tel & Tel Co. v. City of Los Angeles, 227 U.S. 278, 288 (1913), the Fourteenth Amendment Section 242 were both premised on the that "state powers might be abused by those whom possessed and might be used as an instrument to wrongdoings." Congress then enacted Section 242 intended that there will be a federal remedy for the misuse by State law. See Monroe v. Pape 365, U.S. 167 183 (1961). The Congress that enacted 242 intended that there be a remedy for the misuse of state power to abridge federal rights (especially those protected by the Fourteenth Amendment). I have video evidence to show that after my son was in custody, it is still dark out. There is daylight and it is early morning when, after police officers having broken the law, violating my rights and illegally planting evidence, come out of my home with the red bucket.

2. Ms. Torrey suffered prejudice.  United States-v- $8,850.00 461 U.S 555, 013 S. Ct 2005, 76 L. Ed 2d 143 1983 in this case the Supreme Court held the civil forfeiture are subject to the due process clause of the fifth amendment, the court emphasizes the importance of providing property owners with a meaning full opportunity to contest the seizure of their property.

3. Larceny is stealing United States-v- McGee 6th circuit 2009 police officer, convicted of stealing money during drug raid. Upheld conviction, emphasizing that the officers actions violated both the victims rights and the law. My rights were violated and I told the Chief of Police in Brockton that due to fact they are the host as this is their jurisdiction, they are held accountable when working with other agencies and any reasonable law enforcement officer, agent or chief should know that you cannot steal from the public. I should have been able to get the names of every officer, as it is their responsibility when a warrant is served to ensure my rights are not violated by the outside agency. The Brockton Chief of Police was polite and kind,

however I was not given the option to press charges after I advised of the theft as I was told to call Caitlyn O'Donnell because their office had my money. Which I did numerous times, in addition to going there repeatedly and asked for forfeiture proceedings. I spoke to Miss O'Donnell on two occasions, and several times to multiple assistants. It has been 3 years and no meaningful steps for due process have take place. I even employed that I have medical procedures that I have been putting off due to being without my earnestly earned money.

4. United States-V- Del Toro 9th Circuit 1995 case involved several police officers stealing money and drugs during drug raids

5. United States -v- Foster (11th Circuit) 2003 case involved Police Officer convicted of stealing money and drugs during drug raids upheld conviction  highlighting legal consequences of such actions.

6. People v - Rivera Police convicted of stealing money and drugs and planting evidence Importance of Accountability and the role the judicial System has in addressing police misconduct and accountability.

7. People-v- Hobbs 2015 California Case Former Police Officer convicted of stealing money during drug raids and planting evidence in multiple cases.The officer was sentenced to prison for his misconduct highlighting the serious consequences of police theft, misconduct, and corruption.

8. United States -v- Robinson 2013 former police officer in Georgia was sentenced to more than 10 years in Federal Prison for stealing money and property during searches.

9. City of Los Angeles-V- David Anthony Izquierdo 2010 case was convicted of stealing more than 300K in cash, guns, and other property during drug raids. The officers actions led to multiple convictions being over turned and raised the concerns of police integrity and

State Police, Brockton Police
Count 1 28 U.S.C.A  1442(a)(1)(2)(3)(4)(b)(c)d(1)d(3)

1. Brockton police John Doe host city I saw one officer that I recognized, came and went prior to warrant being given to homeowners. Brockton police officer, John Doe was derelict in his duty. If he was not the thief, which I strongly believe was not. He should have been present, especially since all law enforcement officers knew as I told them, there was a large sum of money in my safe, as well as the fuss I made to get the combination. Someone took the opportunity to steal my money and locked safe. *In jail* Brockton police officers are notorious for stealing from ~~people~~ *Known* drug raids and illegal actors. This is a known practice. This has happened to my son and his friends when he was under 18. I have several officers within the department that I know a few. I have sold houses to and for. It is a known fact that many detectives from this department steal. I personally saw a video of veteran detective breaking into a property,$100,000 stolen currency. If *John Doe* ~~Jeno~~ was in my home, he may have stolen $100,000. *as this is their pratice when opportunity arises.*

2. State police violated their oath when violating my rights. They denied me access to my home, Officer John Doe, which can be identified. He had a black truck. He is the officer that brought drugs into my home I have 5 videos which will support all claims that are presented to the court. I have more more, but for the purpose of showing the validity For this part of the claim, I felt it important for the judge to see with his own eyes. The show of force 2 army tanks, at least 35 to 40 law enforcement vehicles, at least 40 to 60 officers and multiple canines. Looked like a standoff at a bank robbery. They, meaning state police railed their forces and came to assassinate my son. It was definitely retaliatory by brother officer Kilfoyle. I heard One say Brian missing the party. Another said don't worry I'll get a picture when we zip up the bag. Are you kidding me. This is before they went to go into the home they were not in fatigues plain clothes. But my focus was on my son. John Doe's and Jane Doe's stole over $100,000, my engagement ring is stolen when purchased close to $20,000, diamond bracelet over $15,000, another $8,500 in gold chains with pendants, as well as three valuable stamps, one cent a red stamp, although three stamps, postmarked, still very valuable. The stamps cannot be replaced. I got the stamps in a property; I sold on W. Chestnut St., Brockton over 20-22 years ago. Seller sold with all property left as is. My client an investor, me *told* and my partner could take anything before clean out. I took a box of old letters, as I knew the stamps were valuable. The stamps *was* were not in my safe common practice to steal from drug raids .

3. FBI agents John and Jane Doe's stole a little over $100,000 U.S currency, three stamps value, not known, one cent, stamps, and two others postmarked already mailed stamps, had been cut off envelopes, Multiple gold necklaces with pendants engagement ring diamond tennis bracelet. All officers are culpable that force their way into my home, without warrant and planted evidence. Common practice to steal from drug raids.

4. Brian Kilfoyle sodomized my son. Violating his fourth, fifth, and 14th amendments. This caused a loss of consortium to family unit. Mr. Kilfoyle was never prosecuted as my son has been in jail, moved over and over again out of state, tortured, and beaten, forced into sexual relations. Mr. Kilfoyle due to my son circumstances never able to press charges will press charges through his attorney Kaitlynn O'Donnell.

Count 2
18 U.S.C.A 1983

1. Prosecutor is discriminating against innocent owner on ~~bias~~ *basis* of skin color. Not affording a forfeiture hearing for 3 years. Claimant can show that same office gave Caucasian woman

Cheryl Klapman, a hearing within 90 days approximately. The forfeiture question was $70,000 or more. She lives in same community. The claimant can prove through evidentary discovery that people of color, minorities were years for hearings, while white individuals get immediate proceeding. Even though the innocent owner presented herself and asked multiple times for her hearing was denied for 3 years. Ms. O'ddonell has repeatedly been called by claimant and ignored. To delay is to deny. The government knew that claimant funds that were being withheld, was causing great harm as she needed for medical procedure. She ignored, scoffed at request due to claimant skin color. As she and her office gave a timely hearing to a white woman that pled guilty to a crime, and ignored my request, over and over as well as others within her office. Ms. Klapman did not object to forfeiture. I did object, and it was known from inception that they were taking an innocent person's money. The money never should have been taken out of home, then denied after numerous request for a hearing. This failure to perform a simple hearing was based on her distain for my son, and I believe is due to being racially biased. Did Klapman get an immediate hearing as well as many others that are white while minorities wait years for same process and this person again pled guilty. I was never charged with a crime. The D.A waited over one year to charge my son with the crime from date of illegal warrant, as they were made aware of police misconduct. I called her and spoke to her and told her my money was stolen from raid. She said she would call FBI and check she never called back. I called again and again I also confronted her at my son's last court date. She was very dismissive. I went to Office. She told me to go which now I know is to file a civil claim but when I went to inquire at the same office, I was told DA has to initiate. This is something

→ Brockton Police Cheif as well numerous times. I am now subject to harrassment State and local Police shine high beams into my home night after night. I called the Police Cheif as well on this matter and this still goes on till this day. State Police Set up drug raids across the Street always smaller Show of force than coming to my house for a Probation warrant, I have too many videos. Every week I'm re-tramatized by the Police Presence, sometimes I don't go home. This is sad situation,

accountability these cases illustrate the importance of holding law enforcement officers accountable for misconduct including theft and corruption for manufacturing evidence.

# VIOLATIONS

U.S.C.A. § 24 (2)(d)(1) A, U.S.C.A Constitutional Amendment 4; U.S.C.A. Amendment 5, 31 U.S.C.A. § 5317, 19; U.S.C.A. § 1615, U.S.C.A. Constitutional Amendment 8; 18 U.S.C. § 983 (c), Violations of Civil Asset Forfeiture Reform Act of 2000, Violations of 18 U.S.C.A. § 983 called into doubt Unconstitutional see United States v. Mendoza D.N.M. Sept 11, 2020 Title 18 Part 1 Chapter 46 February 18, 2016, 28 U.S.C.A. §§ 1345, 1355. Violation of Federal Rules of Evidence (404) b and 403, 21 U.S.C.A. §§ 881. 28 U.S.C.A. 2416(d)(1)(A), 42 U.S.C.A. § 1983; U.S. Constitutional Amendment 14; 21 U.S.C.A. Constitutional Amendment 6 § 853 (n)(e)(c) Violation of Health and Sanitary Code 114884 (i) in its entirety ; 18 U.S.C.A. § 983 General Rules for Civil Forfeiture Proceeding (1) A (i) (ii) (iii) (I) (II) (IV) (V) (B) (C) (D) (F) (2) (A) (C) (I) (3) (A) (4) (A) (5).

# JURISDICTION AND VENUE

This action is brought pursuant to 18 U.S.C.A. § 983 Article III, Section 1 of the United States Constitution 28 U.S.C.A. §1442, U.S.C.A. 24 (2) (d) (1) A, U.S.C.A. Constitutional Amendment 4; U.S.C.A. Amendment 5; 31 U.S.C.A. § 5317; 19 U.S.C.A. § 1615; 18 U.S.C.A. § 983(c); U.S.C.A. Constitutional Amendment 8, Violation of Civil Asset Forfeiture Reform Act of 2000; 28 U.S.C.A. 1345, 1355, Violations of Rules of Evidence 404(b) and 403; 21 U.S.C.A.§ 881. 28 U.S.C.A. § 2416 (d) (1) (A); 42 U.S.C.A. 1983 U.S. Constitutional Amendment 14; U.S. Constitutional Amendment 6 § 853(n) (e) (c) Violation of Health and Sanitary Code 11488(i) in its entirety. The jurisdiction of this court is proper as the acts complained in the complaint occurred in this district. The court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

Venue is proper as acts committed in complaint occurred in this State. In a civil forfeiture action the Fourth Amendment exclusionary rule applies regarding unreasonable searches and seizures. Search, seizure and arrest, warrantless searches, and giving falsified information to a magistrate to obtain a search warrant is illegal.

## PARTIES

Plaintiff

    Michelle M. Torrey is an adult resident of 294 Prospect St Brockton, MA 02301

v.

Defendant(s)

    1.) United States of America ad
Several John and Jane Doe's individually when identified and in their official capacity

    2.) City of Brockton
Officer John Doe, Individually and acting for Brockton Police in his official capacity of law enforcement officer

    45 School St Brockton, MA 02301

    3.) Commonwealth of Massachusetts
and Several John and Jane Doe's individually and acting for the Commonwealth in their official capacity as State Police Officers (as soon as identified by the State they will be formally named)

1 Ashburton Place Boston, MA 02108

4.) District of Massachusetts of Massachusetts

Nicholas Soivilien Individually and in his official capacity as an Assistant District

Attorney for the District of Massachusetts

## Count I: 28 U.S.C.A 1442 (a)(1)(2)(3)(4)(b)(c)(d)

Regarding the forfeiture proceedings (1)d(3)revised (a)(1)

Michelle Torrey and Jose Rodrigues have ownership interest, and the currency was in my bedroom in a lock safe with a lock on door. Ms. Torrey has provided in exhibits that she cashes most of her commission checks and for many years, she cashes her commission and put it in her safe instead of bank. Her average yearly salary is between $145,000 to $175,000 per year. She sold her home in Taunton and netted well over $220,000 on Christmas Eve 2020. To think she did not have $150,000 in her safe is not reasonable as she does not keep large amounts of currency in the bank. Ms. Torrey when she purchased the home in 2005 she put $160,000 down. Was her son an alleged drug dealer at the age of 11 Law is based on reasonable and it is reasonable to think Ms. Torrey making over $140,000 a year plus selling her home and receiving $220,000 plus would not have result in only $148,820 in her safe. Men lie, women lie, money does not lie.

## Count II

Plaintiff, Michelle Torrey re-alleges all the allegations contained in complaint are 1-9 as well as in the body of complaint and background and introduction are part of count 1 as Ms. Torrey is not a lawyer, and has previously requested to the court to appoint a lawyer preferably of Ms. Torrey's choosing. She has provided another motion and asks the court for an additional 7 days to finish all the counts as despite working on this 18 hours a day is not enough time for someone with no college eduction to prepare a legal document of this magnitude. Ms. Torrey is not a lawyer, being deprived access to her currency that was seized and stolen leaves her vulnerable to

protect herself against the United States and their litany of lawyers. The Government and/or their employees have violated the Equal Access to Justice Act (E.A.J.A) 28 U.S.C.A. 2412(d)(1)(A) and 28 U.S.C.A. 2412 (d)(1)(A);

Comprehensive Drug Abuse Prevention and Control Act of 1970 § 511, 21 U.S.C.A. § 881. The claimant has only a high school diploma and would be no match to defend herself against the United States Government, City of Brockton et al John and Jane Doe's arsenal of unlimited counsel.

**WHEREFORE,** MICHELLE M. TORREY requests judgment as follows:

A.

**Amount in Controversy:**

Plaintiff is seeking $148,820.00 plus damages to real property, in addition to emotional and financial harm to claimant. The Government is illegally withholding $62,820.00 from claimant that made claim during illegal search and seizure and showed proof of origin and provided legal paperwork to support. The Government had no right to take these funds as it was honest money. Claimant showed source of money in the form of a HUD Settlement Sheet. Claimant and the Claimant's Attorney were denied access to watch the search and execution of the illegally obtained warrant. Law enforcement stole $85,000.00 not logged in on property sheet and personal property in the form of jewelry was also stolen. Law enforcement has caused physical damage to property, Total loss of Consortium, and caused financial ruin and inability to earn a living.

B.

**Statement of Claim:**

Michelle M. Torrey is owed $148,820.00 in addition to $6,000.00 taken from bedroom and room off of bedroom hidden in various locations. Jewelry stolen, include diamond tennis bracelet, engagement ring, various gold chains with pendants. In 2023 my real estate license was not

renewed due to unpaid taxes which claimant cannot pay due to government holding money hostage and not affording Claimant with a forfeiture hearing for over three years nine months. I have PTSD from this event, and this event has caused damage to my reputation and ability to work. Claimant is looking to litigate matter on each merit and is asking court for immediate return of monies and $2 million in damages.

## C.
**Relief:**

Plaintiff asks that $62,820.00 currency immediately be returned with interest as well as the $85,000.00 law-enforcement stole from her home as a probation violation warrant for my son turned into complete disregard for a rule of law and allowed law enforcement acting outside of their role to obtain an illegal search warrant, which was then the vehicle for law enforcement to plant evidence and steal from me and my family. They seized lawful assets, and I saw and have witnesses that saw an agent bring drugs into my home. I have suffered a complete loss of consortium and I'm therefore requesting, in addition to the amount controversy of $148,820.00, $2 million in damages. The claimant has multiple videos showing violations and misconduct of law-enforcement. In addition, the surveillance system and corresponding footage that was taken from my home will also support the claim of 4th, 5th, 8th, and16th amendment violations. The harm caused by this egregious acts of law enforcement under the color of law acting outside of their duty is clear and present once evidence is presented to court.

Respectfully submitted,

MICHELLE M. TORREY,
On behalf of herself.

Plaintiff,

*Michelle M Torrey*

*Signed under pains and penalties of perjury*

Michelle Torrey

Signed under the pains and penalties of perjury

Dated: July 15, 2024